UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | |
|---|---|
| MICHAEL FOREMAN, Individually and For Others Similarly Situated<br><br>v.<br><br>NES GLOBAL, LLC d/b/a NES FIRCROFT | Case No. 4:26-cv-1353<br><br>Jury Trial Demanded<br><br>FLSA Collective Action<br>Pursuant to 29 U.S.C. § 216(b) |

## COLLECTIVE ACTION COMPLAINT

### SUMMARY

1. Michael Foreman brings this collective action to recover unpaid wages and other damages from NES Global, LLC d/b/a NES Fircroft (NES).

2. NES employed Foreman as one of its Straight Time Employees (defined below) in Texas and Arkansas.

3. NES pays Foreman and its other Straight Time Employees by the hour.

4. Foreman and the other Straight Time Employees regularly work more than 40 hours in a workweek.

5. But NES does not pay Foreman and its other Straight Time Employees overtime.

6. Instead, NES pays Foreman and its other Straight Time Employees the same hourly rate for all hours worked, including hours after 40 in a workweek (NES's "straight time for overtime pay scheme").

7. NES never paid Foreman and the other Straight Time Employees on a "salary basis."

8. NES's straight time for overtime pay scheme violates the Fair Labor Standards Act ("FLSA") by depriving non-exempt employees (Foreman and the other Straight Time Employees) of overtime when they work more than 40 hours in a workweek.

1

## JURISDICTION & VENUE

9. This Court has original subject matter jurisdiction pursuant to 28 U.S.C. § 1331 because this case involves a federal question under the FLSA. 29 U.S.C. § 216(b).

10. This Court has general personal jurisdiction over NES because NES is headquartered in Texas.

11. Venue is proper because NES maintains its principal place of business in Houston, which is in this District and Division. 28 U.S.C. § 1391(b)(1).

## PARTIES

12. NES employed Foreman as a piping engineer in Texas and Arkansas from approximately May 2024 through November 2024.

13. Throughout his employment, NES paid Foreman straight time for overtime.

14. Foreman's written consent is attached as **Exhibit 1**.

15. Foreman brings this collective action on behalf of himself and similarly situated NES employees.

16. The putative collective of similarly situated employees is defined as:

> **All NES employees who were paid according to NES's straight time for overtime pay scheme at any time during the past 3 years (the "Straight Time Employees").**

17. NES is a Florida limited liability company headquartered in Houston, Texas.

18. NES can be served through its registered agent: **C T Corporation System, 1999 Bryan St., Suite 900, Dallas, Texas 75201**.

## FLSA COVERAGE

19. At all relevant times, NES was an "employer" within the meaning of the FLSA. 29 U.S.C. § 203(d).

20. At all relevant times, NES was an "enterprise" within the meaning of the FLSA. 29 U.S.C. § 203(r).

21. At all relevant times, NES was an "enterprise engaged in commerce or in the production of goods for commerce" within the meaning of the FLSA because it had employees engaged in commerce or in the production of goods for commerce, or employees handling, selling, or otherwise working on goods or materials—such as cell phones, computers, and personal protective equipment—that have been moved in or produced for commerce. 29 U.S.C. § 203(s)(1).

22. At all relevant times, NES has had an annual gross volume of sales made or business done of not less than $1,000,000 each year.

23. At all relevant times, Foreman and the other Straight Time Employees were NES's "employees" within the meaning of the FLSA. 29 U.S.C. § 203(e).

24. At all relevant times, Foreman and the other Straight Time Employees were engaged in commerce or in the production of goods for commerce.

## FACTS

25. NES bills itself as "the world's leading engineering staffing provider spanning the Oil & Gas, Power & Renewables, Chemicals, Construction & Infrastructure, Life Sciences, Mining, IT and Manufacturing [industries]."[1]

26. To meet its business objectives, NES hires workers, like Foreman and the other Straight Time Employees, who it "staffs" to its clients.

27. Foreman and the Straight Time Employees regularly work more than 40 hours in a workweek.

28. But NES does not pay them required overtime wages.

---

[1] https://www.nesfircroft.com/about-us/ (last visited February 18, 2026).

29. Instead, under its straight time for overtime pay scheme, NES pays Foreman and the other Straight Time Employees the same hourly rate for all hours worked, including hours after 40 in a workweek.

30. For example, NES employed Foreman as a piping engineer staffed to its client, Veolia North America, from approximately May 2024 through November 2024.

31. Foreman's job duties included organizing meetings, setting schedules, and ensuring code compliance.

32. Foreman typically worked approximately 10 hours a day and five days a week "on the clock."

33. Foreman worked in accordance with the schedule set by NES and Veolia North America.

34. Foreman was NES's hourly employee and reported his hours to NES.

35. NES's records reflect the hours Foreman worked "on the clock" each week.

36. NES paid Foreman approximately $110 an hour.

37. Despite knowing Foreman regularly worked overtime hours, NES never paid him overtime wages.

38. Instead, NES paid Foreman under its straight time for overtime pay scheme.

39. For example, during the two-week pay period ending September 20, 2024, Foreman worked 100 hours, but NES did not pay him "time and a half" for hours over 40 each workweek.

40. Instead, NES paid Foreman at the same hourly rate for all 100 hours, including overtime hours:



41. Because of NES's straight time for overtime pay scheme, Foreman did not receive the required "time and a half" overtime premium wages for hours worked after 40 each workweek.

42. NES pays its other Straight Time Employees according to the same straight time for overtime pay scheme.

43. NES pays them by the hour.

44. NES requires the other Straight Time Employees to report their hours worked.

45. Thus, just as NES maintains records of the hours Foreman worked, it maintains records of the hours worked by the other Straight Time Employees.

46. NES's records show the Straight Time Employees regularly work more than 40 hours in a workweek.

47. Indeed, like Foreman, the other Straight Time Employees typically work approximately 10 hours a day and five days a week (50 hours or more in a workweek).

48. Despite knowing its Straight Time Employees regularly work overtime, NES does not pay them overtime wages.

49. Instead, NES pays all its Straight Time Employees the same hourly rate for all hours worked, including hours worked over 40 in a workweek.

50. NES has never paid Foreman and the other Straight Time Employees on a "salary basis."

51. NES does not pay Foreman and its other Straight Time Employees a guaranteed sum on a weekly or less frequent basis that is not subject to reduction based on the quality or quantity of work.

52. If Foreman and the Straight Time Employees work fewer than 40 hours, NES only pays them for the hours they actually work.

53. Because NES fails to pay Foreman and its other Straight Time Employees on a "salary basis," they are non-exempt employees entitled to overtime.

54. But NES does not pay Foreman and its other Straight Time Employees overtime when they work more than 40 hours in a week in willful violation of the FLSA.

## COLLECTIVE ACTION ALLEGATIONS

55. Foreman brings his claims as a collective action on behalf of himself and the other Straight Time Employees.

56. The Straight Time Employees are uniformly victimized by NES's straight time for overtime pay scheme.

57. Other Straight Time Employees worked with Foreman and indicated they were paid in the same manner under NES's same straight time for overtime pay scheme.

58. Based on his experience, Foreman is aware NES's straight time for overtime pay scheme was imposed on other Straight Time Employees.

59. The Straight Time Employees are similarly situated in the most relevant respects.

60. Even if their job titles and locations might vary, these differences do not matter for the purpose of determining their entitlement to overtime pay.

6

61. Therefore, the specific job titles or locations of the Straight Time Employees do not prevent collective treatment.

62. NES's records reflect the number of "on the clock" hours the Straight Time Employees worked each workweek.

63. NES's records show it paid the Straight Time Employees "straight time" instead of "time and a half," for their overtime hours.

64. The back wages owed to Foreman and the other Straight Time Employees can therefore be calculated using the same formula applied to the same records.

65. Even if the issue of damages were somewhat individual in character, the damages can be calculated by reference to NES's records, and there is no detraction from the common nucleus of liability facts.

66. Therefore, the issue of damages does not preclude collective treatment.

67. Foreman's experiences are typical of the experiences of the other Straight Time Employees.

68. Foreman has no interest contrary to, or in conflict with, the other Straight Time Employees that would prevent collective treatment.

69. Like each Straight Time Employee, Foreman has an interest in obtaining the unpaid wages owed under federal law.

70. A collective action is superior to other available means for fair and efficient adjudication of this lawsuit.

71. Absent this collective action, many Straight Time Employees will not obtain redress for their injuries, and NES will reap the unjust benefits of violating the FLSA.

72. Further, even if some of the Straight Time Employees could afford individual litigation, it would be unduly burdensome to the judicial system.

73. Indeed, the multiplicity of actions would create a hardship to the Straight Time Employees, the Court, and NES.

74. Conversely, concentrating the litigation in one forum will promote judicial economy and consistency, as well as parity among the Straight Time Employees' claims.

75. NES's straight time for overtime pay scheme deprived Foreman and the other Straight Time Employees of the overtime wages they are owed under federal law.

76. There are many similarly situated Straight Time Employees who have been denied overtime in violation of the FLSA who would benefit from the issuance of a court-supervised notice of this lawsuit and the opportunity to join it.

77. The Straight Time Employees are known to NES, are readily identifiable, and can be located through NES's business and personnel records.

### NES's Violations Were Willful

78. NES knew it was subject to the FLSA's overtime provisions.

79. NES knew the FLSA required it to pay non-exempt employees, including the Straight Time Employees, overtime at rates of at least 1.5 times their regular rates of pay for all hours worked after 40 in a workweek.

80. NES knew each Straight Time Employee worked more than 40 hours in at least one workweek during the relevant period.

81. NES knew the Straight Time Employees were its hourly employees.

82. NES knew it paid the Straight Time Employees by the hour.

83. NES knew it paid the Straight Time Employees straight time for overtime.

84. NES knew it did not pay the Straight Time Employees on a "salary basis."

85. NES knew it did not pay its Straight Time Employees a guaranteed sum on a weekly or less frequent basis that was not subject to reduction based on the quantity or quality of work.

86. Thus, NES knew its straight time for overtime pay scheme did not satisfy the "salary basis" test.

87. NES knew it needed to pass the "salary basis" test to qualify for exemptions it might claim with respect to the Straight Time Employees.

88. NES's failure to pay the Straight Time employees "time and a half" overtime wages was neither reasonable, nor was the decision not to pay these employees overtimes wages made in good faith.

89. NES knew, should have known, or showed reckless disregard for whether its conduct described in this Complaint violated the FLSA.

90. Indeed, NES has been sued repeatedly for failing to pay workers overtime, in violation of the FLSA and/or analogous state wage and hour laws, including for paying employees under this same straight time for overtime pay scheme. *See, e.g., Rivas v. NES Global, LLC*, No. 4:23- CV-00885 (S.D. Tex.); *Molleur v. NES Global, LLC*, No. 1:22-CV-00777 (D.N.M.); *Sachin-Amin v. NES Global, LLC*, No. 8:21-CV-00567 (C.D. Cal.); *Richardson v. NES Global, LLC*, No. 4:20-CV-00223 (S.D. Tex.); *Alvarez v. NES Global, LLC*, No. 4:20-CV-01933 (S.D. Tex.).

91. NES knowingly, willfully, and/or in reckless disregard carried out its straight time for overtime pay scheme that systematically deprived the Straight Time Employees of overtime wages for their hours over 40 in a workweek, in willful violation of the FLSA.

### CAUSE OF ACTION
### FAILURE TO PAY OVERTIME WAGES UNDER THE FLSA

92. Foreman brings his FLSA claims as a collective action on behalf of himself and the other Straight Time Employees pursuant to 29 U.S.C. § 216(b).

93. NES violated, and is violating, the FLSA by employing non-exempt employees, such as the Straight Time Employees, in a covered enterprise for workweeks longer than 40 hours without

paying them overtime wages at rates of at least 1.5 times their regular rates of pay for hours worked after 40 in a workweek.

94. NES's unlawful conduct harmed the Straight Time Employees by depriving them of the overtime wages they are owed.

95. Accordingly, NES owes the Straight Time Employees the difference between the wages actually paid and the overtime wages actually earned.

96. Because NES knew or showed reckless disregard for whether its straight time for overtime pay scheme violated the FLSA, NES owes the Straight Time Employees these wages for at least the past 3 years.

97. NES is also liable to the Straight Time Employees for an amount equal to all their unpaid overtime wages as liquidated damages.

98. Finally, the Straight Time Employees are entitled to recover all reasonable attorney's fees and costs incurred in this action.

## JURY DEMAND

99. Foreman demands a trial by jury.

## RELIEF SOUGHT

WHEREFORE, Foreman, individually and on behalf of the other Straight Time Employees, seeks the following relief:

    a. An Order designating this lawsuit as a collective action and authorizing notice to the Straight Time Employees allowing them to join this action by filing a written notice of consent;

    b. An Order finding NES liable to Foreman and the other Straight Time Employees for unpaid overtime wages owed under the FLSA plus liquidated damages in an amount equal to their unpaid wages;

c. A Judgment against NES awarding Foreman and the other Straight Time Employees all their unpaid wages, liquidated damages, and any other penalties available under the FLSA;

d. An Order awarding attorney's fees, costs, and expenses;

e. Pre- and post-judgment interest at the highest applicable rates; and

f. Such other and further relief as may be necessary and appropriate.

Dated: February 19, 2026

Respectfully submitted,

**JOSEPHSON DUNLAP LLP**

By: */s/ Michael A. Josephson*
Michael A. Josephson
TX Bar No. 24014780
Federal ID No. 27157
Andrew W. Dunlap
TX Bar No. 24078444
Federal ID No. 1093163
11 Greenway Plaza, Suite 3050
Houston, Texas 77046
Phone: (713) 352-1100
Fax:    (713) 352-3300
mjosephson@mybackwages.com
adunlap@mybackwages.com

Richard J. (Rex) Burch
TX Bar No. 24001807
Federal ID No. 21615
**BRUCKNER BURCH, PLLC**
11 Greenway Plaza, Suite 3025
Houston, Texas 77046
Phone: (713) 877-8788
Fax:    (713) 877-8065
rburch@brucknerburch.com

**ATTORNEYS FOR FOREMAN
& THE STRAIGHT TIME EMPLOYEES**

11